No. 28,439.

THE MIDLAND LIFE INSURANCE COMPANY, *Appellant*, v. THE NEW ENGLAND SECURITIES COMPANY, HENRY C. FLOWER, as Receiver, etc., WALTER E. LLOYD, and FRED F. FOCKELE, as Trustee, et al., *Appellees*.

(273 Pac. 170.)

Opinion filed January 12, 1929.

*Wilbur S. Jenks*, of Ottawa, *Frank P. Sebree, Henry L. Jost* and *Sam B. Sebree*, all of Kansas City, Mo., for the appellant.

*F. M. Harris*, of Ottawa, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a promissory note and to foreclose a mortgage. The plaintiff was defeated, and appeals.

The facts are substantially these: John Lloyd was the owner of considerable real estate in Franklin county. He had a wife and four sons. In order to provide for distribution of his property at death, he executed a will in which he devised to each of his sons a

portion of his real estate. In order to equalize an unequal division of the land and also to provide a trust fund for the benefit of his wife he directed that each of his sons should pay to Fred F. Fockele, as trustee, a certain sum of money, which, together with the proceeds of the sale of his personal property and the amount collected on his life insurance, was to be invested and the income therefrom paid to his wife so long as she should live. At her death the sum remaining was to be divided equally among the four sons.

Following the death of Mr. Lloyd it was ascertained that there was a blanket mortgage on his real estate for which no provision had been made for payment. The situation resulted in the execution of a contract between the widow and the four sons by the terms of which it was agreed that each of the sons should pay to the trustee the sum of $62.50 quarterly; that the trustee use the money, together with what he realized from the sale of the personal property, to pay the mortgage upon the land, and that whatever was remaining should become part of the trust fund mentioned by the deceased in his will. It was the purpose of the contract that each of the sons should contribute equally to this fund. Accordingly each son made a mortgage upon the land devised to him by the father, to the trustee, to secure the payment of the $250 per year so long as the mother should live. The provisions with relation to the mortgage and pledge were identical for each of the four sons.

After a time the defendant, Walter Lloyd, made default in payments to the trustee. The original contract between the mother and the sons was of record, but despite that and without the consent of the other brothers or the trustee, Walter Lloyd, his wife and his mother, executed a note and mortgage on the land in controversy to the New England Securities Company, which was sold and assigned to the plaintiff. The plaintiff seeks to foreclose such mortgage on the theory that it supersedes the original trust agreement entered into by Walter Lloyd with his mother, his brothers and the trustee. Fred Fockele, the trustee, answered in the action, setting up the trust agreement. The court decreed to him a lien prior to the lien of the plaintiff's mortgage.

The plaintiff contends that the court erred because when the mother executed plaintiff's mortgage she conveyed her interest in the real estate in question and consented to the priority of the plaintiff's mortgage over the lien of the trustee. It is argued that the court had jurisdiction to do complete equity between the

parties, and that as soon as judgment was rendered against the mother, if the lien of the trustee be declared prior to the plaintiff's, he (the trustee) would collect the amount of the lien and pay it to her, and that she should immediately pay it to plaintiff on its judgment against her. The argument, of course, is based upon the theory that Mrs. Lloyd is the sole beneficiary under the trust; that she has an interest in the real estate owned by Walter Lloyd which she could relinquish by signing the mortgage or that she assumes a place inferior to that of the plaintiff. We cannot concur in plaintiff's contention. The obligations of the contract between the mother, the four sons and the trustee, were made mutual. Each son was bound alike. Each son pledged his real estate for the fulfillment on his part of the common bargain, and the trustee was named as the custodian of the fund which was to be thus created. It was also provided that in the end, when the moral or the legal obligations to contribute to the support of the mother should end by her death, that whatever was left arising from any source under the will or the contract was to be divided. This included whatever remained of the original principal after the debts and mortgage were paid, together with whatever parts of the quarterly payments had not been used by the trustee for the support and maintenance of the mother. Mrs. Lloyd had no vested right in the trust fund except that she was entitled to use such portion only of it as was necessary for her maintenance. She could not will away any part of it. She had no legal right to give it to others or to pledge it for her indebtedness.

The purpose of the entire transaction was to place upon the four sons of John Lloyd the legal obligation of providing the fund first, for the support of their mother, and second, for a final distribution among themselves at her death. Each of the sons was interested in the matter in several ways. He was first interested in making his quarterly payments. No one of these quarterly payments would be sufficient to provide a fund adequate for the purpose of the trust, and so each must make them, and each in turn was interested in seeing that the others shared the burden of the trust. Each was interested, also, in seeing that the terms of the trust as applied to all four were faithfully carried out, because at the death of the mother each son would own one-fourth of whatever amount was left in the trust fund. Under the arrangement Mr. Fockele was trustee not only for Mrs. Lloyd but for the entire family. He

owed a duty to each of the four sons to collect from each of them the quarterly payments as long as the mother should live; to properly apply these payments; to prevent as far as possible the diminution of the original trust fund that came into his hands, and at the death of Mrs. Lloyd to faithfully account to each of the sons for whatever amount arising from any source still remained of the trust fund. There was the mutuality of obligation on the part of each of the four sons on one side, the trustee upon a second side and the mother upon the third. Each was interested in the original creation of the trust, in its maintenance by the quarterly payments, in its administration by the trustee during the life of the mother and in the final distribution of the fund at the time of her death. Mrs. Lloyd had no vested interest in the trust fund except in so far as it might be necessary to provide for her the support which her husband desired her to receive.

Numerous authorities cited and relied upon by plaintiff are not, in our opinion, applicable to the facts before us. We think the trial court reached a correct conclusion.

The judgment is affirmed.